# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JIMMIE REED, | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | * CIVIL ACTION NO. 22-00281-KD-B |
| | * |
| ANDRE AVILES, *et al.*, | * |
| | * |
|     Defendants. | * |

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff Jimmie Reed's motion to remand (Doc. 3). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiff's motion to remand be **GRANTED**, that Plaintiff's request for attorney's fees and costs be **DENIED**, and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama.

### I.   BACKGROUND

This case arises from a motor vehicle accident that occurred on June 28, 2021, near the intersection of Highway 43 and Old Military Road in Mount Vernon, Alabama. On September 24, 2021, Plaintiff Jimmie Reed ("Reed") filed a complaint in the Circuit

Court of Mobile County, Alabama against Defendants Andre Aviles ("Aviles"), Cummins, Inc. ("Cummins"), and Progressive Direct Insurance Company ("Progressive").[1]  (Doc. 1-1).  Reed's complaint alleges that Aviles was traveling on Highway 43 "at a high rate of speed and failed to stop at a red light or yield to the right of way of [Reed], who had control of the intersection" and was attempting to turn left on a green arrow, and that Aviles thereby "negligently or wantonly permitted, allowed or caused a motor vehicle to collide with the vehicle that [Reed] was operating, . . . pushing his vehicle into a third vehicle that was stationary on Old Military Road, causing damage to all vehicles."  (Id. at 3).

The complaint alleges that Aviles "was either acting as an agent, employee, borrowed servant, in the course and scope of employment, on a joint errand or mission, or in some other way acting on behalf of or in connection with [Cummins], and as such, [Cummins] is likewise liable for the actions and/or inactions of

---

[1] Reed's complaint also names several fictitious defendants, "a practice which is allowed under the state procedural rules" but "is not generally recognized under the Federal Rules of Civil Procedure." Collins v. Fingerhut Companies, Inc., 117 F. Supp. 2d 1283, 1285 n.1 (S.D. Ala. 2000); see also 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").  Because this case is due to be remanded, it is recommended that no action be taken as to the fictitious defendants.

2

[Aviles]." (Id. at 4). It further alleges that, "[a]dditionally and/or alternatively, [Cummins] was negligent, grossly negligent, reckless, and/or wanton in individually and in its training, monitoring, supervising, and retention of [Aviles]." (Id.). The complaint also alleges that Aviles "may be underinsured, which triggers UM coverage through Progressive, or any other applicable UM/UIM. . . . To date, no UM/UIM/Med Pay carrier has made any payments and [Reed] claims entitlement to said payments." (Id.).

The complaint states that, "if negligence is admitted, then [Reed] is entitled to, at bare minimum, to be compensated for the medical bills incurred from USA Health University Hospital, USA Physicians, and Med-Trans Corporation." (Id. at 3). It further alleges that "the negligence or wantonness of the Defendants" caused Reed to suffer the following injuries and damages:

(a) [Reed] was caused to suffer physical pain and suffering;
(b) [Reed] was caused to suffer mental anguish and emotional distress;
(c) [Reed] was caused to seek medical treatment and was prevented from going about his normal activities;
(d) [Reed] was likely permanently injured;
(e) [Reed] is permanently scarred;
(f) [Reed] was caused to suffer lost wages and loss of earning capacity;
(g) [Reed] was caused to incur medical expenses to treat and attempt to cure his injuries, and
(h) [Reed] was caused to be injured and damaged, all to his detriment.

(Id. at 3-4). For relief, Reed seeks "compensatory and general damages in an amount in excess of the jurisdictional requirements

3

of this Court, said amount to be determined by a trier of fact," plus costs and interest.  (Id. at 5).

Progressive filed an answer to Reed's complaint on January 6, 2022; Cummins filed its answer on January 27, 2022; and Aviles filed his answer on February 25, 2022.  (Doc. 1-5 at 79-80, 98-104, 158-64).  On July 18, 2022, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, asserting the existence of diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. 1).[2]  The notice of removal states that this case was not removable on the basis of diversity of citizenship when Reed filed his complaint because the complaint did not specify the amount of damages claimed and thereby failed to establish the requisite amount in controversy. (Id. at 2).  Instead, the notice of removal asserts that this action became removable on the basis of diversity jurisdiction upon Reed's service of interrogatory responses on June 16, 2022, which listed accident-related medical expenses totaling $125,772.87.  (Id. at 2, 5-6).

On July 27, 2022, Reed filed the instant motion seeking remand of this action to state court, along with a supporting memorandum. (Docs. 3, 4).  Defendants filed a response in opposition, and Reed

---

[2] The notice of removal states that Progressive has "opted out" of this proceeding at the state court level pursuant to the provisions of Lowe v. Nationwide Ins. Co., 521 So. 2d 1309 (Ala. 1988), and that Progressive joins in the removal "to comply with the Court's requirement of all defendants consenting to the removal and is not actively participating in this case."  (Doc. 1 at 1 n.1).

4

filed a reply. (Docs. 5, 6). Having been fully briefed, the motion to remand is ripe for resolution.

**II. LEGAL STANDARDS**

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Id.

A defendant is permitted to remove a case from state court to federal court if the case could have been brought in federal court in the first instance. See 28 U.S.C. § 1441. This includes actions where the federal court has jurisdiction under 28 U.S.C. § 1332(a), which requires complete diversity of citizenship between the plaintiff and defendants and an amount in controversy that exceeds $75,000, exclusive of interest and costs. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)).

The removing party "bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." Dudley v. Eli Lilly and Co.,

5

778 F.3d 909, 913 (11th Cir. 2014). "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008). A court may rely on "its judicial experience and common sense" in determining whether a claim satisfies the amount in controversy requirement. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1064 (11th Cir. 2010). Although a court may not resort to "conjecture, speculation, or star gazing" to find that the jurisdictional threshold is satisfied, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010).

## III. DISCUSSION

As noted *supra*, Defendants' removal is premised on diversity jurisdiction under 28 U.S.C. § 1332(a). The parties do not deny that they are citizens of different states or dispute that the amount in controversy exceeded $75,000 at the time of removal. Instead, Reed argues that Defendants' July 18, 2022 removal was untimely pursuant to 28 U.S.C. § 1446(b)(3), and that remand is required.[3]

---

[3] Thirty days after Defendants' receipt of Reed's June 16, 2022 interrogatory responses was July 16, 2022, which was a Saturday. Defendants filed their notice of removal on Monday, July 18, 2022. (Continued)

6

**A.  Timeliness of Removal.**

Defendants removed this action pursuant to 28 U.S.C. § 1446(b)(3).[4]  (See Doc. 1 at 3).  That subsection provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  Where, as here, removal is based on diversity of citizenship and the amount in controversy is not apparent from the face of the complaint, "information relating to the amount in controversy in the record of the State proceeding, or *in responses to discovery*, shall be treated as an 'other paper'

---

See Fed. R. Civ. P. 6(a)(1)(C) ("When the period is stated in days or a longer unit of time: . . . (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

[4] "The removal procedure statute contemplates two ways that a case may be removed based on diversity jurisdiction.  The first way (formerly referred to as 'first paragraph removals') involves civil cases where the jurisdictional grounds for removal are apparent on the face of the initial pleadings." Jones v. Novartis Pharms. Co., 952 F. Supp. 2d 1277, 1281-82 (N.D. Ala. 2013) (citing 28 U.S.C. § 1446(b)(1)).  "The second way (formerly referred to as 'second paragraph removals') contemplates removal where the jurisdictional grounds later become apparent through the defendant's receipt of 'an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.'" Id. at 1282 (quoting 28 U.S.C. § 1446(b)(3)).

7

under subsection (b)(3)." Id. at § 1446(c)(3)(A) (emphasis added).[5] "Under the statute, once defendant is in possession of the relevant information showing that the case is removable, the thirty-day period starts ticking." Galluccio v. Wal-Mart Stores E. LP, 2020 U.S. Dist. LEXIS 259831, at *8, 2020 WL 12309505, at *3 (N.D. Fla. Dec. 18, 2020).

When assessing removal based on a later received paper, "the court considers the document . . . and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Lowery v. Ala. Power Co., 483 F.3d 1184, 1213 (11th Cir. 2007). "[T]he documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." Id. at 1213 n.63. "The 'jurisdictional amount' must be 'stated clearly on the face of the documents before the court, or readily deducible from them.'" Allen v. Thomas, 2011 U.S. Dist. LEXIS 5969, at *11, 2011 WL 197964, at *4 (M.D. Ala. Jan. 20, 2011) (quoting Lowery, 483 F.3d at 1211).

Reed argues that discovery responses he served on May 3, 2022 made it possible for Defendants to ascertain that this case was removable and started the clock on § 1446(b)(3)'s thirty-day time limit for removal. Thus, Reed contends that Defendants' July 18,

---

[5] Even before this provision was added, the Eleventh Circuit suggested that "other paper" could include discovery responses. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1212 n.62 (11th Cir. 2007).

8

2022 notice of removal, filed more than thirty days after the May 3, 2022 responses were received, was untimely. (Docs. 3, 4). Defendants counter that Reed's May 3, 2022 discovery responses did not unambiguously establish the requisite amount in controversy and therefore did not trigger the thirty-day removal period. (Doc. 5). Instead, Defendants contend that Reed's June 16, 2022 interrogatory responses first allowed them to ascertain an amount in controversy exceeding $75,000, and that their July 18, 2022 removal was timely as a result. (Id.). The Court therefore must determine whether Defendants' May 3, 2022 receipt of "other paper" (i.e., Reed's discovery responses) permitted Defendants to first ascertain that this case was removable. See 28 U.S.C. § 1446(b)(3); see also Clingan v. Celtic Life Ins. Co., 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003) ("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be strictly applied.'") (citations omitted).

The record reflects that Reed served responses to Progressive's first set of interrogatories and request for production of documents on May 3, 2022.[6] (Doc. 9). Progressive's interrogatory #4 requested the following information:

---

[6] Although the parties state that Reed responded to Progressive's discovery requests on May 3, 2022, the certificate of service for Reed's responses is dated May 2, 2022. (See Doc. 9 at 11). This discrepancy has no impact on the outcome of the instant motion, and the undersigned will use the May 3, 2022 date agreed on by the parties in this report and recommendation.

9

> Please state the name of each and every doctor or hospital that has treated you or examined you for injuries sustained in the accident in question, and for each, please state the following:
>
>   a. The address and telephone number;
>   b. The dates of treatment;
>   c. The treatment provided;
>   d. Please submit copies of any bills rendered by said medical professionals;
>   e. Please state the amount of any and all charges made by said professionals[.]

(Id. at 2-3). In response, Reed listed various medical providers; stated that he was "sure there are other medical providers that I cannot recall[;]" directed Progressive to "[p]lease see medical records and bills for additional information[;]" and provided the following chart:

| 7/1/21-9/24/21 | Amedisys Home Health Care | $10,734.56 |
| 6/28/21 | Mobile Co. EMS | $808.62 |
| 6/28/21 | Lifeflight | TBD |
| 7/7/21-10/19/21 | Saraland Family | $453.00 |
| 6/28/21-7/2/21 | USA Physicians | $12,293.00 |
| | USA Health Hospital | $46,506.15 |
| | **TOTAL** | **$70,795.33** |

(Id. at 3).[7]

---

[7] In his May 3, 2022 interrogatory responses, Reed reiterated that he was claiming property damage and damages for pain, suffering, and mental and emotional trauma as a result of the accident, but he provided no itemized amounts with respect to those damages. (See Doc. 9 at 8-9). Although his complaint alleged that he "was
(Continued)

Reed also produced a copy of his air ambulance bill with his May 3, 2022 discovery responses. The bill listed the following information:

**ROCKY MOUNTAIN HOLDINGS, LLC**
PO BOX 713375
CINCINNATI OH 45271-3375
(888) 636-4438
Air Ambulance Services provided by Air Methods Corporation

Patient Name: REED, JIMMIE L

Run Number: 21-140326
Date of Call: 6/28/2021
Time of Call: 09:28
Caller:

JIMMIE L REED
158 LANG RD
MCINTOSH, AL, 36553

From: 31.086500 -88.018000
To: USA Health Univ Hospital

Primary payor: BCBS AL
MBG884228479
Secondary payor: Bill Patient

| Description | Check # | Quantity | Unit Price | Payment Date | Amount |
|---|---|---|---|---|---|
| Helicopter Rotor Base | | 1 | 39,929.78 | | 39,929.78 |
| Helicopter Rotor Miles | | 28 | 537.42 | | 15,047.76 |
| Contractual Allow – Medicare | | 1 | | 7/1/2021 | 14,044.80 |
| Contractual Allow – Medicare | | 1 | | 7/1/2021 | 34,736.97 |

**CMS Rules determine Medicaid/Medicare payments made to providers are conditional where a settlement is pending. In the event a settlement is garnered, Medicaid/Medicare will be refunded by the provider and the provider is thereby entitled to full payment from the settlement for total balances to include contractual and/or bad debt write-offs**

BALANCE: 6,195.77

(Doc. 4-2).

Later, on June 16, 2022, Reed served responses to Cummins' first set of interrogatories. (Doc. 1-2). Cummins' interrogatory

---

caused to suffer lost wages and loss of earning capacity," (Doc. 1-1 at 4), Reed's May 3, 2022 interrogatory responses stated that he was not making a claim for lost wages. (Doc. 9 at 1, 5).

11

#14 asked Reed to "[d]escribe in detail all economic damages and/or losses you sustained as a direct result of the MVA." (Id. at 6). In his response, Reed provided the following chart:

| 7/1/21-9/24/21 | Amedisys Home Health Care | $10,734.56 |
| 6/28/21 | Mobile Co. EMS | $808.62 |
| 6/28/21 | Lifeflight | $54,977.54 |
| 7/7/21-10/19/21 | Saraland Family | $453.00 |
| 6/28/21-7/2/21 | USA Physicians | $12,293.00 |
| | USA Health Hospital | $46,506.15 |
| | **TOTAL** | **$125,772.87** |
| | **Property Damage** | **$TBD** |

(Id. at 6-7).[8]

Reed argues that Defendants could clearly ascertain that the amount in controversy exceeded $75,000 upon receipt of his May 3, 2022 discovery responses, which included an itemized list of Reed's medical bills totaling $70,795.33 (and which stated "TBD" for the Lifeflight bill) and Reed's air ambulance bill listing charges totaling $54,977.54. (Doc. 4 at 4-6). Alternatively, Reed contends that the itemized medical bills totaling $70,795.33, combined with the nature of the injuries and the complaint's

---

[8] Reed's June 16, 2022 response to Cummins' interrogatory #14 was identical to his May 3, 2022 response to Progressive's interrogatory #4, except that his chart now listed "$54,977.54" rather than "TBD" for the Lifeflight bill and included a row for property damage. (Compare Doc. 1-2 at 6-7, with Doc. 9 at 3).

allegations of permanent injury and scarring, were sufficient to trigger the thirty-day removal period even without the air ambulance bill. (Id. at 5 n.1). In response, Defendants posit that they were not required to "look[ ] past [Reed's] verified interrogatory answer that provided a number below the $75,000 jurisdictional threshold and dig through hundreds of pages of medical bills to find additional bills that were not in his line-item list of medical expenses." (Doc. 5 at 2). Defendants emphasize the standard for removal based on a later received paper set forth in Lowery, and they maintain that Reed's May 3, 2022 discovery responses did not "clearly and unambiguously" establish that the amount in controversy exceeded $75,000. (See id. at 3-4).

Having carefully reviewed the record, the Court finds that Defendants could have ascertained that more than $75,000 was in controversy on May 3, 2022. It is undisputed that Reed's discovery responses on that date itemized past medical expenses, including an air ambulance bill in an amount "TBD" and bills for five days in the hospital starting on the date of the accident, which totaled $70,795.33. (See Doc. 9 at 3). Even if these were the only specific numbers pertaining to the amount in controversy that Defendants received on that date, Defendants could have easily determined that more than $75,000 would be put at issue in the course of the litigation, given that Reed also claimed property

13

damage as well as pain and suffering, mental anguish, emotional distress, permanent scarring, and likely permanent injury. Indeed, any contrary conclusion would require the implausible belief that Reed's air ambulance bill and demands for compensatory damages for property damage, likely permanent injury, permanent scarring, pain and suffering, mental anguish, and emotional distress, could conceivably combine to amount to less than $4,204.68. See Liscano v. Stegall, 2018 U.S. Dist. LEXIS 55889, at *8-9, 2018 WL 1956122, at *3-4 (S.D. Ala. Mar. 30, 2018) (holding that defendant could have ascertained that the jurisdictional threshold was satisfied based on receipt of plaintiffs' interrogatory responses stating that they were claiming $70,000 and $72,000 in lost wages, respectively, because it was "inconceivable" given the damages other than lost wages alleged in the complaint that the amount in controversy would not have exceeded $75,000 for at least one plaintiff), report and recommendation adopted, 2018 U.S. Dist. LEXIS 69462, 2018 WL 1953026 (S.D. Ala. Apr. 25, 2018); see also Bosky v. Kroger Texas, LP, 288 F.3d 208, 210 (5th Cir. 2002) ("[S]pecific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal.").

In any event, Defendants *did* receive additional specific information pertaining to the amount in controversy in Reed's May 3, 2022 discovery responses, in the form of his air ambulance bill. As reflected above, the bill listed charges totaling $54,977.54, payments totaling $48,781.77, and a balance of $6,195.77. (See Doc. 4-2). Even the lowest of these numbers, combined with the $70,795.33 in itemized medical expenses, reflected past medical expenses alone that exceeded this Court's jurisdictional threshold.[9]

---

[9] Defendants cite Moore v. Wal-Mart Stores E., LP, 2015 WL 5813164 (M.D. Ala. Oct. 5, 2015), in support of their argument that Reed's May 3, 2022 discovery responses did not unambiguously establish that the amount in controversy exceeded $75.000. (See Doc. 5 at 5-6). In Moore, the plaintiff argued, like Reed does here, that her discovery responses constituted an earlier "other paper" demonstrating that the jurisdictional minimum was satisfied and rendering the defendant's later removal untimely. Id. at *7. The court rejected the plaintiff's argument that the defendant could have analyzed the medical bills she produced with her discovery responses and concluded that the jurisdictional minimum was met. Id. However, the Court finds Moore to be materially distinguishable from the case at bar. Here, Reed responded to Progressive's interrogatory requesting his accident-related medical charges by providing an itemized (albeit incomplete) list of medical bills totaling nearly $71,000. (See Doc. 9 at 2-3). In contrast, the plaintiff in Moore merely "stated in her responses to Defendant's specific interrogatories requesting the amount of both medical and nonmedical expenses that 'such information was unknown at this time.'" See Moore, 2015 WL 5813164, at *7. Moreover, the plaintiff in Moore "produced, albeit in response to Defendant's request for the same, medical records and bills *unrelated to the alleged slip and fall and resulting injuries*." Id. (emphasis added). Here, there is no indication that Reed produced medical records or bills unrelated to the motor vehicle accident in question. The Court also notes that Moore was a slip-and-fall case that did not involve a claim for property damage. (Continued)

15

"Something is unambiguous when it is susceptible of but one reasonable interpretation or meaning." SUA Ins. Co. v. Classic Home Builders, LLC, 751 F. Supp. 2d 1245, 1250 (S.D. Ala. 2010). Reed's May 3, 2022 discovery responses, which included $70,795.33 in itemized past medical expenses, an air ambulance bill reflecting charges of $54,977.54 and a balance of $6,195.77, and a reiteration of the complaint's allegations of property damage, pain, suffering, and mental and emotional trauma, could not "reasonably be construed other than as reflecting that more than $75,000 is in controversy." See id. Thus, the undersigned concludes that the deadline to remove this case was June 2, 2022, and that Defendants' July 18, 2022 removal was consequently untimely.

B. **Request for Attorney's Fees and Costs.**

Reed contends that Defendants' removal after the thirty-day deadline was not reasonably justified. (Doc. 4 at 7). Reed notes that Defendants refused to voluntarily withdraw their notice of removal even after his attorney pointed out to them that the air ambulance bill listing charges totaling nearly $55,000 was produced along with the itemization of other accident-related medical expenses totaling $70,795.33 on May 3, 2022. (Id. at 6-7; see Doc. 4-3). Thus, Reed argues that the Court should require

---

See id. at *1. Given these significant differences, the undersigned does not find the court's reasoning in Moore to control the outcome of the instant remand motion.

Defendants to pay his "costs and fees for the research and filing of the Motion and Memorandum seeking Remand." (Doc. 4 at 8). Defendants respond that they had an objectively reasonable basis for removing this action, and that Reed's request for expenses and attorney fees should be denied. (Doc. 5 at 7).

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A decision as to whether to award attorney's fees and costs under § 1447(c) lies within the broad discretion of the district court. Grace v. Interstate Life & Acc., Ins. Co., 916 F. Supp. 1185, 1192 (M.D. Ala. 1996). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005).

Although the undersigned ultimately concludes that Defendants' removal was untimely, the undersigned cannot conclude that Defendants' removal based upon receipt of itemized medical expenses totaling more than $75,000 was objectively unreasonable. See Matrix Advert., LLC v. Gilman, 2021 U.S. Dist. LEXIS 125052, at *16, 2021 WL 2800644, at *5 (S.D. Fla. July 6, 2021) ("[I]t was not objectively unreasonable for Defendants to believe that the

17

amount in controversy requirement was established upon receipt of the November and December invoices. Rather, Defendants' removal, while untimely, demonstrates a cautious approach to exercising their right of removal."); <u>Punales v. Hartford Ins. Co. of Midwest</u>, 2019 U.S. Dist. LEXIS 124608, at *6-8, 2019 WL 3369104, at *3-4 (S.D. Fla. July 26, 2019) (holding that $119,941 public adjuster estimate provided first in plaintiffs' settlement offer and later in plaintiffs' discovery responses triggered the thirty-day removal period and rendered defendant's later removal untimely, but denying plaintiffs' request for attorney fees and costs because "[d]efendant's position, that this case was removable only after obtaining further confirmation via deposition testimony that the amount in controversy was met, was not objectively unreasonable"). Therefore, the undersigned submits that Reed's request for attorney's fees and costs should be denied.

**IV. CONCLUSION**

For the reasons stated above, it is recommended that Reed's motion to remand (Doc. 3) be **GRANTED,** that Reed's request for attorney's fees and costs incurred in seeking remand be **DENIED,** and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects

to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **18th** day of **August, 2022.**

                                                    /s/ SONJA F. BIVINS
                                      **UNITED STATES MAGISTRATE JUDGE**